14-3253-cv
*Mangino v. Inc. Vill. of Patchogue*

# In the
# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2015
No. 14-3253-cv

JOHN MANGINO,
*Plaintiff-Appellant*,

v.

INCORPORATED VILLAGE OF PATCHOGUE,
JOHN P. POULOS, AND JAMES NUDO,
*Defendants-Appellees*.[*]

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: OCTOBER 20, 2015
DECIDED: DECEMBER 22, 2015

Before: NEWMAN, WINTER, and CABRANES, *Circuit Judges*.

---

[*] The Clerk of Court is directed to amend the caption of this appeal as indicated above.

On appeal from the March 10, 2014 judgment of the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*) dismissing plaintiff-appellant John Mangino's complaint against defendants-appellees the Incorporated Village of Patchogue and Fire Marshal John P. Poulos, and the District Court's August 1, 2014 order denying Mangino's motion to set aside the verdict and for a new trial.

We (1) **AFFIRM** the District Court's dismissal of Mangino's First Amendment retaliation claim, as the criminal summonses on which it is premised were supported by probable cause, the issuance of the non-criminal Fire Prevention Violation Order on which it is premised was otherwise justified, and Mangino has not made any argument that the issuance of the Fire Prevention Violation Order was significantly more serious than other action Poulos had discretion to take; (2) **AFFIRM** the District Court's dismissal of Mangino's abuse-of-process claim on qualified-immunity grounds because, at the time of the alleged conduct, although there was a clearly established right to be free from abuse of process under New York law, there was no clearly established right to be free from abuse of process where probable cause existed; and (3) **AFFIRM** the District Court's denial of Mangino's motion to set aside the verdict and for a new trial because it is clear that, when read in context, the District Court's jury instructions were not erroneous.

---

>ROBERT A. SIEGEL, Law Office of Robert A. Siegel, New York, NY, for *Plaintiff-Appellant*.
>
>MARK A. RADI (Brian S. Sokoloff, *on the brief*), Carle Place, NY, for *Defendants-Appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question presented is whether, in August 2005, there was a clearly established right to be free from abuse of process under New York law even where probable cause existed. We conclude that there was not.

Plaintiff-appellant John Mangino ("Mangino") appeals from the March 10, 2014 judgment of the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*) dismissing his complaint against defendant-appellees the Incorporated Village of Patchogue (the "Village") and Village Fire Marshal John P. Poulos ("Poulos"). The appeal seeks review of the District Court's September 23, 2010 order dismissing Mangino's First Amendment retaliation claim, *see Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205 (E.D.N.Y. 2010), and its September 30, 2011 order dismissing his abuse-of-process claim, *see Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011). Mangino also appeals from the District Court's August 1, 2014 post-judgment order denying his

3

motion to set aside the verdict and for a new trial. *See Mangino v. Inc. Vill. of Patchogue*, No. 06-CV-5716 (JFB), 2014 WL 3795572 (E.D.N.Y. Aug. 1, 2014).

As explained more fully below, we (1) **AFFIRM** the District Court's dismissal of Mangino's First Amendment retaliation claim, as the criminal summonses on which it is premised were supported by probable cause, the issuance of the non-criminal Fire Prevention Violation Order on which it is premised was otherwise justified, and Mangino has not made any argument that the issuance of the Fire Prevention Violation Order was significantly more serious than other action Poulos had discretion to take; (2) **AFFIRM** the District Court's dismissal of Mangino's abuse-of-process claim on qualified-immunity grounds because, at the time of the alleged conduct, although there was a clearly established right to be free from abuse of process under New York law, there was no clearly established right to be free from abuse of process where probable cause existed; and (3) **AFFIRM** the District Court's denial of Mangino's motion to set aside the verdict and for a new trial because it is clear that, when read in context, the District Court's jury instructions were not erroneous.

## BACKGROUND

At some point between 2001 and 2003, Mangino purchased with his wife, whom the District Court dismissed from the case, an apartment building in Patchogue, New York. Pl.'s App'x 67. When he purchased the building, he applied for a two-year rental permit,

4

as required by the Village's rental-permit law. *Id.* at 74. After he received the permit, he began renting apartments to tenants. When his permit expired in or around 2004, he did not renew it. *Id.* at 78, 80–81.

In January 2005, defendant-appellee James Nudo ("Nudo"), the Village's Housing Inspector and Code Enforcement Officer, issued criminal summonses to Mangino for continuing to rent out apartments despite his failure to renew his rental permit. *Id.* at 83–84. Mangino challenged in court these summonses and their manner of service, as well as the validity of the Village's rental-permit law. *Id.* at 85. Mangino alleges that, in response, the Village prosecutor threatened him, stating that if he did not settle the pending litigation against the Village or accept a plea bargain, he would be "hit with a barrage of summonses." *Id.*

On July 21, 2005, one of Mangino's tenants, Dawn Gucciardo ("Gucciardo"), called the Village Housing Department and requested that someone check the power in her apartment. *Id.* at 142–44. Nudo answered Gucciardo's call, *id.* at 142, and later filed an incident report in which he wrote that Gucciardo had told him that she feared the conditions in her apartment, which included electrical problems, would result in a fire, *id.* at 142–44; Ex. RR, *Mangino v. Inc. Vill. of Patchogue*, No. 06-CV-5716 (JFB) (E.D.N.Y. Feb. 19, 2010), ECF No. 47. Nudo forwarded this incident report to Poulos. Pl.'s App'x 145. On July 22, 2005, Gucciardo called the Housing Department to report "that things were 'getting fixed,'" but Poulos was not present when the Housing Department received this call. *Id.*

5

According to defendants-appellees, on July 25, 2005, Gucciardo called the Village Housing Department again, this time to complain that the outlets in her apartment were sparking or arcing. *Id.* at 146–49. Defendants-appellees claim that, when Poulos was informed of this call, he immediately departed for Mangino's building to investigate. *Id.* at 151–52. Mangino, however, claims that Gucciardo never called the Village Housing Department on July 25, 2005. *Id.* at 146–49.

When Poulos arrived at the building, he informed Mangino that he had come to check the outlet in Gucciardo's apartment. *Id.* at 159. Mangino refused to let Poulos into the building without a warrant. *Id.* at 160. Poulos then called Nudo to request his assistance and informed Mangino that, if Mangino would not allow Poulos in, Poulos would call the Village Fire Department. *Id.* at 160–61. When Mangino still refused to grant Poulos entry, Poulos called in an "all-encompassing general alarm." *Id.* at 161–63.

When the Village firemen arrived, they inspected the building, including Gucciardo's apartment and the basement. *Id.* at 168, 170–73. They did not find any sparking or arcing outlets in Gucciardo's apartment. *Id.* at 172. But according to defendants-appellees, a Captain Welsh noticed two potential hazards while in the basement and radioed Village Fire Chief Joseph Wagner, who was still outside the building. *Id.* at 173–74. Defendants-appellees claim that Welsh and Wagner then requested Poulos's assistance in inspecting these potential hazards. *Id.* at 177–78. Poulos eventually entered the building and proceeded to the basement. *Id.* at 179–80. Defendants-

6

appellees assert that Captain Welsh and the other inspecting firemen pointed out the two potential hazards to Poulos, at which point Poulos wrote down his observations and issued a Fire Prevention Violation Order ("FPVO") to Mangino. *Id.* at 181–92. The FPVO required Mangino, by September 1, 2005, to repair the hazardous conditions or supply the Village with a licensed engineer's report stating that no corrective action was necessary; this deadline Poulos later extended to October 31, 2005. *Id.* at 192–93, 583–87.

On August 11, 2005, Nudo and Village Housing Coordinator Joanne Gallo visited Mangino's building to investigate Gucciardo's July 21, 2005 complaints, and inspected Gucciardo's apartment with her consent. *Id.* at 200–02. On the same day, Nudo issued 18 separate summonses to Mangino for a variety of alleged violations of the Village Code. *Id.* at 204. On August 27, 2005, Mangino was served with additional summonses, issued by Nudo and dated August 5, 8, 9, 11, 12, 13, 14, 15, and 16, for failure to renew his rental permit on those dates. *Id.* at 84–103. Although Mangino admits that he did not have a rental permit in August 2005 and that he continued to rent apartments in his building during this time, all of the summonses issued to him for violation of the Village's rental-permit law were ultimately dismissed. *Id.*

On February 14, 2008, Mangino filed the operative Second Amended Complaint, in which he asserted various claims against defendants-appellees, including claims under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments to the U.S.

7

Constitution. *Mangino*, 739 F. Supp. 2d at 225–26.[1] Mangino's sole First Amendment claim was for retaliation, *id.* at 247, while his Fourth Amendment claims included abuse of process and warrantless entry, *id.* at 226. On September 23, 2010, following the parties' cross-motions for summary judgment, the District Court dismissed Mangino's First Amendment retaliation claim because he had failed to show that defendants-appellees' allegedly retaliatory conduct chilled the exercise of his First Amendment rights. *Id.* at 248–49. On September 30, 2011, the District Court also dismissed Mangino's Fourth Amendment abuse-of-process claim on qualified-immunity grounds. *Mangino*, 814 F. Supp. 2d at 249–52.

The case proceeded to trial on Mangino's warrantless-entry claim, which trial took place from February 24 through March 10, 2014. *Mangino*, 2014 WL 3795572, at *1. The jury returned a unanimous verdict for defendants-appellees, concluding that Mangino had not proven by a preponderance of the evidence that Poulos fabricated an exigent circumstance and thus lacked probable cause to enter Mangino's building without a warrant. *Id.* In a subsequent motion under Rule 59(a) of the Federal Rules of Civil Procedure, Mangino argued that the District Court's jury

---

[1] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. *See generally Rehberg v. Paulk*, 132 S. Ct. 1497, 1501–02 (2012).

instructions improperly allowed the jury to consider events other than those that allegedly took place on July 25, 2005 as justification for the warrantless entry. *Id.* at *1, *5–8. The District Court rejected this argument, *id.* at *8, and Mangino timely appealed.

## DISCUSSION

### I. First Amendment Retaliation Claim

We begin with Mangino's argument that the District Court erred in dismissing his First Amendment retaliation claim. "We review a district court's grant of summary judgment de novo." *Baldwin v. EMI Feist Catalog, Inc.*, —F.3d—, 2015 WL 5853739, at *7 (2d Cir. Oct. 8, 2015). Here, the District Court held that, to make out a First Amendment retaliation claim, "the plaintiff must show that . . . defendants' actions effectively chilled the exercise of [his] First Amendment right." *Mangino*, 739 F. Supp. 2d at 247 (internal quotation marks omitted). According to the District Court, Mangino failed to satisfy this requirement because "the undisputed evidence indicate[d] that [his] conduct was not, in fact, chilled by defendants' alleged retaliatory conduct." *Id.* at 249. In so holding, the District Court relied primarily on our decision in *Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001), in which we stated—precisely as the District Court recited—that a "plaintiff must prove . . . defendants' actions effectively chilled the exercise of his First Amendment right." *Id.* at 73.

But more than three years after the District Court's decision, we acknowledged in *Dorsett v. County of Nassau*, 732 F.3d 157 (2d

9

Cir. 2013), that "there is some tension in our First Amendment standing cases"; that "[w]e have sometimes given the impression that silencing of the plaintiff's speech is the only injury sufficient to give a First Amendment plaintiff standing"; and that our description of the chilling-effect requirement in *Curley* "was an imprecise statement of law." *Id.* at 160. We clarified that "[c]hilled speech is not the *sine qua non* of a First Amendment claim," and that "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation *or* that he has suffered some other concrete harm." *Id.* (second emphasis supplied).

Thus, under *Dorsett*, the District Court's dismissal of Mangino's claim was incorrect as a matter of law—although we emphasize that it was imprecision in our own precedents, on which the District Court understandably relied, that caused this result. That the District Court's dismissal was in error, however, does not necessarily mean that Mangino's First Amendment retaliation claim should be reinstated, as "we are entitled to affirm the judgment on any basis that is supported by the record." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 245 (2d Cir. 2015) (internal quotation marks omitted).

"The existence of probable cause will defeat . . . a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence [him]." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012); *see also Hartman v. Moore*, 547 U.S. 250, 252 (2006) (holding that, in a *Bivens* action "for inducing prosecution in retaliation for speech," a

10

"complaint [cannot] state[ ] an actionable violation of the First Amendment without alleging an absence of probable cause to support the underlying criminal charge," and "that want of probable cause must be . . . proven").[2] This is because "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government." *Fabrikant*, 691 F.3d at 215 (internal quotation marks omitted). Here, as the District Court correctly found, *see Mangino*, 739 F. Supp. 2d at 230 n.22, probable cause existed with respect to each of the criminal summonses issued to Mangino—including Ticket #16518, which is the only such summons that Mangino argues on appeal was not supported by probable cause, *see* Pl.'s Br. 26 ("Plaintiffs have conceded that probable cause existed for the issuance of all but two of the 30 tickets issued. With respect to those two, plaintiffs draw the Court's attention to appearance ticket # 16518[.]"); *id.* at 27 n.3 ("[P]laintiffs['] focus is on ticket number 16518[.]").

Mangino asserts that "there was no probable cause for the issuance of that ticket because it was written a day before the crime being alleged[.]" *Id.* at 26. But we find unpersuasive Mangino's position that "whether probable cause existed for [the] issuance [of Ticket # 16518] should be determined by the circumstances at the

---

[2] "Though more limited in some respects not relevant here, a *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Hartman*, 547 U.S. at 255 n.2.

11

time the [summons] was issued"—by which he means at the time the summons was *written*—and "not when the [summons] was served and filed." *Id.* at 28. Mangino identifies no controlling authority that supports this proposition, and the single district-court decision he cites is inapposite. *See id.* Furthermore, we have "agree[d] with [a] district court that [a plaintiff's] claim[ ] of . . . First Amendment retaliation fail[ed] because [the] defendants had probable cause to believe [that the plaintiff] committed" the offense at issue, *Fabrikant*, 691 F.3d at 215–16, where the district court had analyzed whether probable cause existed at the time the defendants arrested the plaintiff and executed a search warrant against her, and not at some earlier point, such as when the warrant was sought or signed, *see Fabrikant v. French*, 722 F. Supp. 2d 249, 256–57 (N.D.N.Y. 2010), *aff'd*, 691 F.3d 193 (2d Cir. 2012).[3] Accordingly, we affirm the District Court's order of September 23, 2010 dismissing Mangino's First Amendment retaliation claim insofar as it is premised on the summonses.

But Mangino's First Amendment retaliation claim is not premised solely on the summonses—it is also premised on Poulos's issuance of the FPVO. And the parties seem to agree that the issuance of the FPVO was not a criminal prosecution, but a non-criminal regulatory enforcement action. *See* Pl.'s Reply Br. 6 ("[T]he

---

[3] Relatedly, we have also held that "[t]he existence or nonexistence of probable cause in a malicious prosecution suit . . . is determined, at the earliest, as of the time prosecution is commenced." *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004).

12

issuance . . . of the . . . FPVO was not a[ ] . . . prosecution."); Defs.' Br. 32–33 ("The [FPVO] did not constitute a prosecution. . . . [P]laintiffs did not have to appear in court on the FPVO."). As such, probable cause cannot defeat Mangino's First Amendment claim insofar as it is premised on the issuance of the FPVO. *Cf. Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 828 (2002) ("The probable-cause standard . . . is peculiarly related to criminal investigations . . . ." (internal quotation marks omitted)).

Be that as it may, Mangino does not dispute that he committed the violations on which Poulos's issuance of the FPVO was based. And while it may be true that, at least under certain circumstances, a plaintiff can prove First Amendment retaliation even if the measures taken by the state were otherwise justified, he may do so only if he can show that the defendant, for improper motive, took regulatory action that was significantly more serious than other action he had discretion to take. *See Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538 (2d Cir. 2014) (official, for improper motive, ordered facility closed rather than order code violations remedied). Here, Mangino has not made any argument that the issuance of the FPVO was significantly more serious than other action Poulos had discretion to take. Moreover, nothing in the record would support such an argument.[4]

---

[4] Nor is this a case like *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147 (2d Cir. 2006), where state officials had discretion to classify a nursing home's deficiencies in various categories, each resulting in consequences that escalated in seriousness.

We therefore also affirm the District Court's dismissal of Mangino's First Amendment retaliation claim insofar as it is premised on Poulos's issuance of the FPVO.

## II. Abuse of Process Claim

We turn next to Mangino's argument that the District Court erred in dismissing his abuse-of-process claim, which dismissal we also review de novo. *See, e.g.*, *Doe ex rel. Doe v. Whelan*, 732 F.3d 151, 155 (2d Cir. 2013) (reviewing de novo a district court's grant of summary judgment on qualified-immunity grounds). The basis for this dismissal was the District Court's determination that Nudo was entitled to qualified immunity because, under New York law, "although there was a clearly established right to be free from malicious abuse of process at the time of the alleged conduct"— that is, in August 2005 —"it was not clearly established that such a claim [could] exist even when probable cause existed for the issuance of the [summonses]." *Mangino*, 814 F. Supp. 2d at 247. We agree.

There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law.[5] In *Weiss v. Hunna*, 312

---

[5] When a plaintiff asserts an abuse-of-process claim under Section 1983, "we turn to state law to find the elements," *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)—in this case, New York State law. *See also Savino v. City of N.Y.*, 331 F.3d 63, 76–77 (2d Cir. 2003) (relying on New York State case law in holding that the plaintiff had failed to state a claim for abuse of process under Section 1983; *cf. Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015) ("Assuming abuse of process is

14

F.2d 711 (2d Cir. 1963), we suggested that it is not, holding that "the gist of the tort of abuse of process, as distinguished from malicious prosecution, is not commencing an action or causing process to issue *without justification*, but misusing or misapplying process *justified in itself* for an end other than that which it was designed to accomplish." *Id.* at 717 (emphasis supplied) (internal quotation marks omitted); *see also Alexander v. Unification Church of Am.*, 634 F.2d 673, 677–78 (2d Cir. 1980) (same), *overruled on other grounds by PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988).[6]

But in *PSI Metals, Inc. v. Firemen's Insurance Co. of Newark, New Jersey*, 839 F.2d 42 (2d Cir. 1988), we held that one of the elements of an abuse-of-process claim under New York law is "an intent to do harm *without excuse or justification*." *Id.* at 43 (emphasis supplied) (internal quotation marks omitted); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (same); *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir.

---

cognizable under § 1983, we would look to state law to determine the elements of the claim . . . .").

[6] In support of his argument that probable cause is not a complete defense to an abuse-of-process claim, Mangino repeatedly cites *Lodges 743 & 1746, International Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp.*, 534 F.2d 422 (2d Cir. 1975), in which we held that "[a]buse of process . . . does not depend upon whether or not the action was brought without probable cause or upon the outcome of the litigation." *Id.* at 465 n.85. *See* Pl.'s Br. 33, 34, 40; Pl.'s Reply Br. 20. *United Aircraft Corp.*, however, concerned a labor strike in Connecticut, and did not involve New York law. Thus, it does not bear on the matter at hand. *See ante* note 5.

15

2001) (same); *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (same).

In the years between our decision in *PSI Metals* and August 2005, when the alleged conduct occurred, numerous district courts within our Circuit interpreted this formulation to mean that probable cause is a complete defense to an abuse-of-process claim under New York law, because it is an "excuse or justification."[7] Indeed, we have since lent support to this interpretation in a non-precedential summary order, in which we held that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the

---

[7] *See, e.g.*, *Granato v. City of N.Y.*, No. 98-CV-667 (ILG), 1999 WL 1129611, at *7 (E.D.N.Y. Oct. 18, 1999) ("[A] showing of probable cause at the time process issued suffices also to establish 'excuse or justification' for the purposes of a defense to abuse of process." (citing *Berman v. Silver, Forrester & Schisano*, 549 N.Y.S.2d 125, 127 (2d Dep't 1989) (dismissing the plaintiff's abuse-of-process claim in part because "the defendants had probable cause to commence the prior action"))); *Harmer v. City of Lockport*, No. 98-CV-10E (JTE), 2000 WL 210201, at *4 (W.D.N.Y. Feb. 9, 2000) ("One element [of] an abuse-of-process claim is that such process was employed without excuse or justification, and a showing that defendants had probable cause to effectuate plaintiff's arrest will suffice to establish a justification for the purpose of defeating such a claim." (citation omitted)); *Hernandez v. Wells*, No. 01-CV-4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003) (declining to dismiss the plaintiff's abuse-of-process claim only because the plaintiff had "raised a genuine issue of material fact about whether [one of the defendants] had probable cause to assert that [the plaintiff] had assaulted him"); *Hickey v. City of N.Y.*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *7 (S.D.N.Y. Nov. 29, 2004) ("[T]he existence of probable cause offers a complete defense to [abuse of process]."), *aff'd*, 173 F. App'x 893 (2d Cir. 2006); *Almonte v. City of N.Y.*, No. 03-CV-5078 (ARR), 2005 WL 1229739, at *5 (E.D.N.Y. May 20, 2005) ("The existence of probable cause offers a complete defense to a claim of abuse of process.").

officers lacked probable cause for her arrest . . . required dismissal of her . . . claims of abuse of process." *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 F. App'x 71, 74 (2d Cir. 2009).

We need not, and do not, resolve this confusion here, as its very existence establishes that Nudo is entitled to qualified immunity.[8] "[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . [I]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (same). As the foregoing makes clear, it was not only officers of reasonable competence, but federal judges, who could so disagree. *Cf. Pearson v. Callahan*, 555 U.S. 223, 244–45 (2009) ("[O]fficers are entitled to rely on existing lower court cases without facing personal liability for their actions."); *Richardson v. Selsky*, 5 F.3d 616, 623 (2d Cir. 1993) ("If the district judges in the Southern District of New York, who are charged with ascertaining and applying the law, could not determine the state of the law with reasonable certainty, it seems unwarranted to hold . . . officials to a standard that was not even clear to the judges . . . ."); *Hope v. Pelzer*,

---

[8] It may be possible to reconcile *PSI Metals* with *Weiss* by reading the former's reference to "excuse or justification" as a reference to *economic* or *social* excuses or justifications, as opposed to *legal* excuses or justifications such as probable cause. *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) ("To prove abuse of process, plaintiff must show . . . the person activating the process must have been motivated to do harm without *economic or social* excuse or justification . . . ." (emphasis supplied)). But again, we do not address, much less resolve, that issue.

17

536 U.S. 730, 763 (2002) (Thomas, J., dissenting) ("[I]n the face of recent Federal District Court decisions specifically rejecting [similar] claims . . . , it seems contrary to the purpose of qualified immunity to hold that one vague sentence plucked out of a 21-year-old Court of Appeals opinion provided clear notice to respondents . . . .").[9] Accordingly, we affirm the District Court's dismissal of Mangino's abuse-of-process claim.[10]

### III.     Jury Instructions

Finally, substantially for the reasons stated in the District Court's sound decision denying Mangino's motion to set aside the verdict and for a new trial, *see Mangino*, 2014 WL 3795572, at *5–8,

---

[9] To be clear, we cite the district-court decisions and summary order discussed above merely as *evidence*, and not the *source*, of the ambiguity in the case law. The ambiguity was created by Second Circuit precedent alone—cases such as *Weiss* on one side and cases such as *PSI Metals* on the other.

[10] This appeal "presents the legal possibility that law, which may have once been clear [for purposes of qualified immunity], can become unclear later." *Santamorena v. Georgia Military Coll.*, 147 F.3d 1337, 1342 n.11 (11th Cir. 1998). Which is to say, it may be the case that, under this Circuit's interpretation of New York law, the existence of a right to be free from abuse of process even where probable cause existed was incontrovertible in 1963, when *Weiss* was decided, but had been called into question by 1988, when *PSI Metals* was decided, or 2005, when the alleged conduct occurred. No matter—"[t]he nature of the law is not always to move from unsettled to settled. Although one of our decisions may not be expressly overruled, later cases . . . may bring its reasoning or holding into such doubt that the elements set out in the case are no longer clearly established . . . ." *Id.*; *see also Townes v. City of N.Y.*, 176 F.3d 138, 144 (2d Cir. 1999) (suggesting that subsequent case law can "unsettl[e]" rights once clearly established).

18

we conclude that the District Court's jury instructions were free of error, regardless of whether the applicable standard of review is de novo, *see* Pl.'s Br. 43, or plain error, *see* Defs.' Br. 54–55.. Mangino claims that, "in failing to contain a limiting temporal reference to July 25th, the charge/verdict question submitted [was] inherently confusing, misguided, and prevented a proper application of the law," Pl.'s Br. 45, but a review of the disputed instructions demonstrates that they appropriately limited the jury's consideration of exigency to that date.

In a paragraph of the jury charge that specifically referred to "July 25, 2005," the District Court instructed the jury that, "[i]n particular, the defendants maintain that the Village received a telephone call from a tenant complaining about an arcing or sparking wire in an apartment, which justified entry into the house without a warrant to ensure the safety of the tenants." Pl.'s App'x 2165. The theory that defendants-appellees advanced at trial was that Gucciardo called the Village on July 25, 2005 to complain about an arcing or sparking wire, not that she did so on any earlier date. The instructions were therefore not erroneous.

## CONCLUSION

We have considered all of Mangino's other arguments and find them to be without merit. Accordingly, for the foregoing reasons, we:

(1) **AFFIRM** the District Court's dismissal of Mangino's First Amendment retaliation claim, as the criminal summonses on which

19

it is premised were supported by probable cause, the issuance of the non-criminal Fire Prevention Violation Order on which it is premised was otherwise justified, and Mangino has not made any argument that the issuance of the Fire Prevention Violation Order was significantly more serious than other action Poulos had discretion to take;

(2) **AFFIRM** the District Court's dismissal of Mangino's abuse-of-process claim on qualified-immunity grounds because, at the time of the alleged conduct, although there was a clearly established right to be free from abuse of process under New York law, there was no clearly established right to be free from abuse of process where probable cause existed; and

(3) **AFFIRM** the District Court's denial of Mangino's motion to set aside the verdict and for a new trial because it is clear that, when read in context, the District Court's jury instructions were not erroneous.